STATE OF IOWA, Appellee, v. J. B. GILLILAND, Appellant.

PROSTITUTION: Nature of ''Resorting''—Instructions. Instruc-
1 tions requiring a finding that defendant resorted to a house of prostitution "for the purpose of having sexual intercourse" is sufficient when, from the instructions as a whole, the jury must have understood that the court had reference to "indiscriminate and unlawful sexual relation."

PROSTITUTION: Reputation of Keeper. Evidence of the general
2 reputation for chastity of the keeper of an alleged house of prostitution, both before and after she became such keeper, is admissible on the issues (1) as to the *character* of the house, and (2) as to the defendant's *purpose* in resorting to the house, provided he had knowledge of such prior reputation.

CRIMINAL LAW: Instructions—Assumption of Fact. It is not
3 erroneous to infer in instructions that certain evidence *tends*
to prove an issuable fact.

WITNESSES: Conviction of Crime—Instructions. Error results
4 from instructing that, in considering the testimony of a wit-
ness who has been convicted of a crime, the jury should (1)
consider such conviction as bearing on credibility, and (2) test
such testimony *by the same rules applicable to other witnesses.*

CRIMINAL LAW: Trial—Notice of Additional Testimony. A no-
5 tice of additional testimony may be signed by the *assistant*
county attorney, whether he be a regular assistant or one spe-
cially authorized to act in the particular case.

CRIMINAL LAW: New Trial—Misconduct of Juror. Statements
6 of fact by a juror during deliberation, bearing on a material
issue in the cause, prejudicial to the accused, and made as of
the juror's personal knowledge, constitute such error as viti-
ates the verdict.

*Appeal from Ringgold District Court.*—HOMER A. FULLER, Judge.

NOVEMBER 11, 1919.

THE defendant appeals from a judgment of conviction
in the district court of Ringgold County, of the crime of re-
sorting to a house of ill fame for the purpose of lewdness.
—*Reversed.*

*Charles J. Lewis* and *Baker & Parrish,* for appellant.

*H. M. Havner,* Attorney General, for appellee.

STEVENS, J.—I. The indictment charges that the de-
fendant resorted to a house of ill fame, kept by Addie
Zornes and Laura Swisher, in Mt. Ayr, Ringgold County,
for the purpose of lewdness. Many criti-

1. PROSTITUTION: nature of "resorting:" instructions.

cisms are urged against a number of the
court's instructions. The court, in its eighth
instruction, stated that the burden rested
upon the State to prove beyond a reasonable doubt that the

house in question was visited by persons of both sexes, for the purpose of having sexual intercourse. The ground of appellant's objection to this instruction is that the court should have stated that the place was visited by persons of both sexes for the purpose of indiscriminate and unlawful sexual relations. This is the effect of the instruction, taken as a whole, and it must have been so understood by the jury. The court correctly defined prostitution, and the jury could not reasonably have inferred that other than indiscriminate unlawful relations were referred to.

II. The court's instructions Nos. 11 and 14 relate to the purpose for which certain evidence bearing upon the general reputation of Addie Zornes and Laura Swisher for

chastity was received. By the eleventh in-

**2. PROSTITUTION: reputation of keeper.** struction the jury was informed that it might consider this evidence as bearing up-on the character of the place kept by them, and by the fourteenth instruction the jury was further informed that certain evidence tending to show the bad reputation of Addie Zornes for chastity at a time prior to that when it is charged she became the keeper of the alleged house of ill fame might be considered, as throwing light upon the defendant's object and purpose in going to said house.

Evidence of the general reputation of the parties named for chastity, both before and after they engaged in the business of keeping a house of ill fame, was admissible, as bearing upon the character of the place kept by them. Whether evidence tending to show the general reputation of Addie Zornes for chastity prior to the time she engaged in the business charged could be considered upon the question of defendant's purpose in going to the place would depend upon whether he had knowledge thereof. Some evidence from which the jury might infer that defendant knew the character of Addie Zornes, before she moved into the

house in question, was offered, and, according to his own testimony, defendant was familiar therewith at and prior to the time the offense was committed; so, if it were conceded that the fourteenth instruction should not have been given, no prejudice could have resulted to defendant on account thereof.

III.   The first sentence of Instruction 12, which is as follows, "evidence has been offered by the State, tending to show that acts of lewdness and immorality were indulged in, in the house in question, by others at times when the defendant, J. B. Gilliland, was not present," is also assailed by counsel for appellant, upon the ground that it assumes that evidence had been introduced from which the jury might infer that acts of lewdness were committed by other persons at the place in question, whereas, in fact, no such evidence had been received. Unless the record is barren of evidence upon this question, the portion of the instruction complained of is not erroneous. *State v. Baughman,* 111 Iowa 71. Considerable evidence was introduced to the effect that men indiscriminately, and at various hours of the day and night, visited the place in question; that two men in no wise related to either of the inmates or keepers thereof spent most of the time there; and that the reputation of the place was that of a house of ill fame. No specific acts of lewdness were shown, nor does the instruction so state. The evidence does, however, strongly tend to sustain the finding of the jury that the place in question was a house of ill fame, and that acts of lewdness were committed therein by other persons than the defendant. The objections urged to this instruction are not well taken.

3. CRIMINAL LAW: instructions: assumption of fact.

IV.   The court in its nineteenth instruction stated to the jury that:

"A witness who has been convicted of a felony, and

while serving a sentence of imprisonment therefor, is a competent witness to testify on the trial of actions in court.

4. WITNESSES: conviction of crime: instruction.

The jury should take into consideration the fact of such conviction as affecting the character and credibility of such witness. In this case, it is admitted that the witness Laura Swisher has been convicted of a felony, and is now serving a sentence therefor in the Women's Reformatory at Rockwell City, Iowa."

Had the instruction closed at this point, defendant would have had no cause to complain thereof, but it continued:

"Her testimony is to be tested by the same rules that are applicable to other witnesses and other testimony, and such testimony should be considered in connection with all the other testimony submitted to the jury, and should be given such weight by the jury as you think it is entitled to, and no more."

Section 4613 of the Code provides that:

"A witness may be interrogated as to his previous conviction for a felony. But no other proof is competent, except the record thereof."

See *Hackett v. Freeman & Graves*, 103 Iowa 296; *Palmer v. Cedar Rapids & M. R. Co.*, 113 Iowa 442; *State v. Carter*, 121 Iowa 135; *State v. Loser*, 132 Iowa 419; *State v. Foxton*, 166 Iowa 181; *State v. Concord*, 172 Iowa 467.

It is probable that the court, in giving the portion of the instruction last quoted had in mind that, except for the weight to be given to the evidence of her prior conviction of a felony, her testimony should be tried and tested by the same rules as that of other witnesses. It is very doubtful whether the instruction made this clear to the jury. If the weight and credibility of the testimony of a witness who is shown to have been convicted of a felony is to be judged by the same rules as that of other witnesses

and other testimony, the statute would avail little to the adverse party. The defendant was entitled to the full benefit of the statute; and, while it is possible that the jury might not have been misled, the portion of the instruction complained of should have been omitted, or the jury clearly told that the evidence that the witness had been convicted of a felony should be considered in determining the credibility of the witness, and the weight to be given her testimony, no matter by what other rules it should be weighed. Objections to other instructions are without substantial merit.

V. The defendant objected to the witness Laura Swisher's testifying as a witness for the State, upon the ground that her name was not endorsed on the indictment, and that no notice such as is required by 5. CRIMINAL LAW: trial: notice of additional testimony. Section 5373 of the 1913 Supplement to the Code, of the introduction of her evidence, had been given. It is conceded that a notice signed "V. R. McGinnis, Assistant County Attorney," containing all the statutory requirements, was served upon the defendant or his attorneys. The ground upon which the sufficiency of the notice is challenged is that it was not signed by the county attorney, or in his name by the assistant county attorney. Section 303-a of the 1913 Supplement to the Code provides that:

"The county attorney may in writing, with the consent of the board of supervisors, appoint one or more practicing attorneys, who are residents of his county, as his assistants. * * * In any county, with the approval of the judge of the district court, he may procure such assistants in the trial of a person charged with felony as he shall deem necessary and such assistants * * * shall be allowed a reasonable compensation therefor, to be fixed by the board of supervisors."

Whether McGinnis was a regular assistant appointed

by the county attorney, or an assistant employed with the approval of the judge of the district court, is not disclosed; but it appears that he assisted the county attorney in the trial of this case. The statute does not specifically require that notice of the introduction of evidence be signed by the county attorney, but this is clearly imported thereby. It was signed by an attorney of record, who was an assistant county attorney, and embraced all matters required by statute. The purpose for which the notice is required was fully met, and defendant suffered no prejudice from the failure of the county attorney to sign the same.

VI. Affidavits of two of the jurors, filed with defendant's motion for a new trial, recite certain facts which, it is claimed, show prejudicial misconduct of one of the jurors.

6. CRIMINAL LAW: new trial: misconduct of juror.
Much that is alleged in the affidavits relates to matters inhering in the verdict, and can be given no consideration. *State v. Dudley,* 147 Iowa 645. It appears, however, from the affidavits filed, that a member of the panel, after the instructions had been read and the jury had retired for deliberation, stated, in the presence of affiants, that the defendant was not, at the time of the alleged visits to the house of ill fame, a constable, and that he got drunk on Hallowe'en night, and was, in consequence, removed from office. No counter showing was made. As stated, the offense charged against the defendant consisted of resorting to a house of ill fame, kept by Addie Zornes and Laura Swisher, for the purpose of lewdness. Certain visits thereto were admitted by the defendant, and other visits were established by the testimony of numerous witnesses who resided in the vicinity.

The defendant, in explanation of the purpose for which the visits admitted by him were made, testified that he held the office of constable, and went there at the request of the landlord, to collect some past-due rent, and that this was

the sole purpose of his visits. The owner of the building testified that he employed defendant to collect some rent for him. It is true that collecting rent is not a necessary part of the official duty of a constable, but it is a matter of common knowledge that officers of this character in small cities and towns are frequently called upon to perform services of this nature. The statements of the juror put the purpose of the visits directly in issue, and reflected upon the credibility of defendant's testimony. The juror resided at Mt. Ayr, and assumed to know the truth thereof. The alleged errand to collect rent, as claimed by defendant, was not necessarily a duty of his office; nevertheless, if true, it established that his purpose was an innocent one. Why jurors, who have taken an oath to try the case according to the law and the evidence, should make or listen to statements of the nature charged, is difficult to understand. Both affiants swore that, but for the statements of the juror, they would not have voted to convict the defendant. These statements cannot, of course, be considered. The character of the alleged remarks was such that we cannot say that no prejudice resulted to the defendant therefrom. His claim that he was constable was not disputed. Nevertheless, the remarks, the truth of which he assumed to know, not only went directly to the purpose of the visit, but were well calculated to seriously discredit his whole testimony with the jury. In this connection, see *State v. Wegener,* 180 Iowa 102.

VII. It is also insisted by counsel for appellant that the evidence is insufficient to sustain a conviction. In view of a probable retrial of the case, we refrain from discussing this question, or expressing an opinion thereon. For the reasons indicated, the judgment of the court below is reversed, and the cause remanded to the district court of

Ringgold County for such further proceedings as the county attorney shall deem advisable.—*Reversed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.