THOS. L. DOUGHERTY, Guardian, Appellee, v. JENNIE BELLE McFEE et al., Appellants.

No. 43102.

392

FEBRUARY 13, 1936.

REHEARING DENIED JUNE 19, 1936.

Miller, Miller & Miller, and E. F. McEniry, for appellants.

E. L. Carroll and D. W. Harper, for appellee.

RICHARDS, J.—In this law action plaintiff sought to recover damages from defendants on account of personal injuries his ward Fredrickson sustained when an automobile, owned by defendant Peterson, and being operated by defendant McFee, struck Fredrickson as he was walking across a street intersection in the city of Creston. Plaintiff's action against defendant McFee is grounded upon her alleged negligence. Plaintiff seeks to impute liability on part of defendant Peterson because she was the owner of the car and consented to its operation by defendant McFee. From a judgment against defendants rendered upon a jury's verdict, they have taken this appeal.

We first consider defendants' assignments of error based on their proposition that the evidence establishes that Fredrickson was guilty of negligence per se and that such negligence contributed as a proximate cause of his injuries.

Much of the evidence pertinent to this contention of defendants has to do with the surroundings at the intersection of Adams and Elm streets in Creston, where occurred the accident out of which this action arose. Adams street, extending east and west, is 80 feet wide, and the paving thereon is 64 feet in width. Elm street extends north and south and the paving is 36 feet in

width. At the intersection of these two streets the movement of traffic on both streets at the time of the accident was governed by red and green traffic lights adjusted to alternate with a frequency of about 20 seconds. At each corner the intersection was lighted with an electrolier having two 300-watt lamps. There were also colored Christmas lights strung diagonally above the intersection. The accident occurred a few minutes after 6 o'clock in the evening of December 8, 1933, it being already dusk. Immediately before the accident Fredrickson was walking north on the sidewalk on the east side of Elm street. His testimony, undisputed, is that when he reached the southeast corner of the intersection he stopped, looked in all directions for approaching vehicles, and saw no cars excepting two near the middle of Adams street at the east edge of the intersection, and 25 feet north of the south edge of the paving, headed west, at a standstill with the red traffic lights at the intersection showing against them. Fredrickson, also observing that there was no traffic approaching from the south on Elm street that might turn on the green light to the east into Adams, and observing that the traffic lights on Elm street were green, inviting traffic on Elm street to cross the intersection, proceeded north on the pedestrian lane on the east side of the intersection walking at a "pretty good gait." When he had walked toward the north over the intersection for a distance of 12 or 15 feet, the traffic lights changed in favor of east and west traffic. There is evidence that Fredrickson noticed the change in lights, hesitated momentarily, looked over his shoulder, and after taking another step or two was struck by the left or north part of the front bumper of the car being driven by defendant McFee, at a point 20 to 23 feet north of the south curb on Adams street. Another step or two by Fredrickson would have placed him in the clear of defendants' car. During the time the traffic lights had been against east and west traffic, defendant McFee, driving an automobile, with the headlights visible, was approaching the intersection from the west. She observed that the red light was against her and slowed down, but as she came to the intersection the lights changed giving her the green light, and she drove on into the intersection without stopping. She testifies that when she entered the intersection her speed was not more than 15 miles per hour at the west side of the intersection, and that she did not increase her speed a great deal as she passed on through

the intersection. There is also evidence that she drove across the intersection at near 20 miles per hour, and that she traveled 45 to 50 feet after striking Fredrickson before coming to a stop, with her brakes in good order. There is also in evidence Ordinance 397 of the City of Creston, providing, among other things, that at intersections where traffic is controlled by traffic-control signals the operators of vehicles shall yield the right of way to pedestrians who have started to cross the roadway on a "go" signal.

 Under this state of facts appellants contend that Fredrickson was negligent as a matter of law because, as appellants say Fredrickson "walked into the path of the automobile when it was but a few feet away, plainly visible, but although Fredrickson says he looked, he did not see the vehicle at all." In the authorities cited by defendants, to support their proposition, there are not found some of the important facts that are disclosed in the case at bar. Appellants cite Whitman v. Pilmer, 214 Iowa 461, 468, 239 N. W. 686, 688, wherein plaintiff's decedent was held guilty of contributory negligence per se, the facts having been that the decedent-pedestrian in daylight attempted to cross a street in the middle of a city block. We said:

"When she got in position to see, if she did not look to the north for approaching cars, she was guilty of negligence. If she did look, and if her view was not obstructed, she must have seen defendants' car within a *few feet* of her and was negligent in crossing the street in front of it. The circumstances seem to call for the conclusion as inevitable that decedent did not look when she was in position to see." (Italics supplied.)

In Sheridan v. Limbrecht, 205 Iowa 573, 577, 218 N. W. 278, 279, plaintiff attempted to cross a city street at a place where there was no intersection or street crossing for pedestrians and was struck by defendant's car. The opinion says:

"As between a pedestrian and an automobile on the street, the pedestrian has the better opportunity to avoid collision. If an automobile is about to pass in front of him he can readily stop. But, if he attempts to pass in front of an automobile, the problem is more difficult. In this case the automobile was proceeding at 15 miles an hour. When the plaintiff proceeded to cross its path, the automobile was in plain view of him, and was

necessarily within a very *few feet* from him. He could not have failed to see it, if he had looked. No excuse is shown for his failure to look. We think he was clearly guilty of contributory negligence.'' (Italics supplied.)

In Spaulding v. Miller, 216 Iowa 948, 955, 249 N. W. 642, 645, plaintiff's decedent was held guilty of contributory negligence; the court saying:

"The undisputed facts show that he attempted to cross the street at a point other than the regular pedestrians' crossing at the intersection; that he attempted to cross in a congested and busy portion of the street; that he stepped out to a point near the middle of the street; that he either paid no attention whatever to the approach of appellants' car or, if he did see it, with full knowledge that it was approaching and within a *few feet* of him, he stepped directly into its path.'' (Italics supplied.)

It is quite apparent that the facts in the case at bar distinguish it from the authorities just cited. In the cases cited the automobile driver was rightfully proceeding along the street. The pedestrian stepped directly into the path of the car so rightfully proceeding, and within a few feet of the car. In the case at bar the automobile was at a considerable distance when Fredrickson started to cross the intersection, as shown by the fact he proceeded 20 or 23 feet before he was reached by the car traveling at the speed herein described, so it cannot be said he walked into the path of a car but a few feet away. The fact that the red light was against defendant approaching from the west is another element in the case at bar not found in the cited cases. If Fredrickson had seen defendant's car he would have had the right to proceed in reliance that defendant would not come into the intersection while prohibited by the red light from so doing, and the limitation that Fredrickson could not so rely after he knew or should have known differently has no application to the facts in this case, because there was nothing different to be known, as defendant McFee in fact remained outside the intersection while the red light held. Fredrickson proceeded 12 or 15 feet, reaching nearly the middle of the south half of Adams street devoted to eastbound traffic, when the lights changed. There being nothing to indicate that Fredrickson did not have the right to rely upon the assumption we have

mentioned, up to the time when the lights changed, we find no facts that would warrant us in saying Fredrickson was negligent as a matter of law up to that time. There remains to consider the question of his alleged negligence thereafter. To say that when the lights changed so that east and west traffic then had the green or ''go'' signal, without saying more, might indicate an emergency, more or less perilous to the pedestrian Fredrickson. But to have the whole and correct picture, there must be additionally said that the movement by east and west vehicular traffic upon authority of the ''go'' sign was conditional upon such traffic yielding the right of way to pedestrians who had previously started to cross the roadway on a ''go'' signal. This duty was imposed on drivers of vehicles by an integral portion of the Creston city ordinance controlling traffic at intersections equipped with ''stop'' and ''go'' light signals. Having previously started to cross on a ''go'' signal, it was Fredrickson's right to assume that vehicles would yield to him such right of way, until he knew or should have known differently. It is also true that it was his duty to exercise reasonable and ordinary care and caution even while it was his right to act in reliance upon such assumption. If after the lights changed, in the exercise of the care and caution of an ordinarily prudent person, he discovered or should have discovered that defendant was violating her duty to yield to him the right of way, he then should have used such information for his protection in the manner to be expected of a reasonably careful and prudent person. In applying the rule of conduct mentioned in the preceding sentence, a fact of large import is the brevity of the interval between the change of the lights and the contact of the car with Fredrickson. It is the record that the lights changed as defendant McFee came to the intersection, so that she came driving on through the intersection without stopping, after having reduced her speed somewhat in her approach toward the red light. It is the language of appellee that defendant ''took the intersection on the run.'' In defendant's own language she entered the intersection ''at not more than 15 miles an hour,'' and she says she did not increase her speed a great deal as she passed through the intersection. There is other evidence that her speed was near 20 miles per hour across the intersection, where speed in excess of 15 miles per hour was unlawful. Illustrative of the brevity of the interval above mentioned, at a speed of 20 miles

per hour only a second of time would be consumed by defendant's car in traversing the greater portion of· the width of the intersection. Neither the court nor jury would be justified in holding Fredrickson chargeable with contributory negligence without first taking into consideration the suddenness of the peril in which he found himself, and the almost instantaneous character of the collision of the car with his body; the emergency not being created by any negligence of Fredrickson, as we above find. Corbett v. Hines, 194 Iowa 1344, 1354, 191 N. W. 179, 183. In the Corbett case it is said:

"If, then, as we hold in the cited case, an opportunity of 4½ seconds to escape a sudden and imminent peril is not sufficient to charge the victim with contributory negligence as a matter of law, in failing to escape it, surely the opportunity here shown, of less than 2 seconds, should not be held to conclusively impose such fearful responsibility upon the deceased in this case."

In the case at bar there is the additional consideration that there were in Fredrickson's surroundings, and in line of his vision as he looked ahead, other things that might easily divert his attention, reference being made to the two cars, standing at the east border of the pedestrian lane, also owing Fredrickson the right of way, but otherwise entitled to proceed to the west. With Fredrickson having the right of way, the proposition, that a failure by him to turn and look for cars possibly approaching from his left would not in itself be negligence per se, we need not determine, although under the facts in Roe v. Kurtz, 203 Iowa 906, 210 N. W. 550, it was held that the alleged negligence was a jury question where a driver of a vehicle having the right of way failed to look to his left for approaching vehicles at an intersection of city streets. This proposition need not be considered, because even if appellants' claim should be conceded that ordinarily it was the absolute duty ·of Fredrickson to turn and look to his left, nevertheless under all the facts related it must be said that after the lights changed, such an insufficient opportunity was afforded Fredrickson to make observations and protect his safety that any failure in that respect was not negligence per se. To hold with appellants would amount to imposing upon an ordinarily careful and prudent person unreasonable requirements and expectations with reference to his conduct, in an

emergency not created by him. The court correctly submitted to the jury the question of Fredrickson's alleged contributory negligence.

▐■▌ Appellants assign as error the overruling of their objections to the filing of a third amendment to plaintiff's petition after the trial had commenced. The purpose of this amendment was to plead City Ordinance 397, already referred to. Plaintiff's previous amendments, one of them filed on a day prior to the commencement of the trial, attempting to plead the ordinance, had been stricken on motion because of infirmities exhibited by the pleading. The materiality of the ordinance is in the regulations therein made as to the movement of traffic and pedestrians at intersections equipped with such signals as were upon the intersection where this accident occurred. It appears that in their opening statements to the jury counsel for both parties made references to the traffic lights at this intersection, including specific description thereof by defendants' counsel. It would also appear that the city engineer had been examined and testified with respect to the signal lights without objection on part of defendants. It also appears that in overruling defendants' objections to the filing of the amendment the court advised counsel for defendants that they would be allowed to recall for further cross-examination any witness theretofore offered by plaintiff on the question of the signal light ordinance. We cannot find that the court abused its discretion in permitting the filing of the amendment. We do not find any indication in the record that defendants were taken by surprise or in anyway prejudiced.

In instruction No. 10, upon the question of contributory negligence, the court charged the jury that a pedestrian crossing an intersection of a highway may assume that the driver of an automobile approaching him on the highway will not violate the provisions of the laws of Iowa, and if within a city the ordinances of such city, but that this does not absolve such pedestrian from the duty of making such use of his senses, including sight and hearing, as would be made by an ordinarily careful and prudent person under the same or similar circumstances. The court further charged that failure by Fredrickson to make such use of his senses would be contributory negligence. Appellants do not attack the instruction except to say the court erred in not incorporating therein appellants' requested instruc-

tion No. 1. This requested instruction would have charged the jury that before plaintiff can recover he must show by a preponderance of evidence that Fredrickson maintained a reasonable outlook for the car operated by defendant McFee. The duty imposed on Fredrickson by the instruction was to use his senses to see or hear anything that a reasonably careful and prudent person, using his senses, would have seen or heard, under the same circumstances. Defendant's car was an element in or a part of such circumstances that the jury could not well overlook, and the instruction was applicable thereto without specific mention as well as any other things that an ordinarily careful person, using his senses, would have seen or heard in these circumstances in evidence. To the extent mentioned the thought of the requested instruction is found in the instruction given.

But appellants say the court should have gone further by incorporating substantially the language of the requested instruction. Contrary to our above conclusion that it was a question for the jury whether Fredrickson as a reasonably prudent person should have made observations of the approach of defendant's car, the jury would easily understand from the requested instruction that unless observations were in fact actually made defendant was negligent as a matter of law. The requested instruction usurps the function of the jury to consider whether there were good reasons that the observation was not made, and whether there was time or opportunity to make any such outlook after the lights changed, and to consider whether under all the facts in this case a reasonably prudent person would have maintained an outlook for a car when it was outside the intersection and barred from entering by a stop signal.

The court did not err in refusing the requested instruction.

**▌█▌** In instruction No. 13 the court charged the jury, among other things, that no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. The court thus correctly stated one portion of Code section 5029. Appellants claim error in that the court did not also instruct the jury, as contained in defendants' requested instruction No. 7, that this duty does not extend so far as to require that it must always be possible to bring the car to an immediate stop on the sudden arising of a dangerous situation, which the driver could not reasonably have anticipated. Regardless of the correctness of the prop-

osition contained in defendants' requested instruction, there was no fact situation in the case at bar that would warrant it being given. Defendant McFee was not traversing a rural primary highway where the sudden coming upon the paving of some person or object emerging from a place of concealment on the side of the road may not have been anticipated. On the contrary, she was traversing a busy intersection in a city, where pedestrians were to be anticipated, and where pedestrians had the right to cross with the green lights, and where defendant was bound to grant the right of way to such pedestrians as had started to cross before the change of the lights. This was not a dangerous situation which this driver could not reasonably have anticipated, and in view of all the facts there was no prejudice to the defendants in the refusal of the court to instruct as requested, should the correctness of the appellants' legal proposition be conceded.

Another assignment of error is that defendants did not have a fair trial on account of misconduct on the part of jurors during the deliberation. The showing in support was the testimony of two jurors that some of the jurors had some conversation about the possibility that defendant carried liability insurance. The court struck all of this evidence immediately after it was offered. If the matter be treated as not inherent in the verdict, nevertheless we are satisfied that the statements and remarks were of such a character that it cannot be said they probably influenced or prejudiced the jury in the rendition of the verdict. State v. Clark, 210 Iowa 724, 231 N. W. 450.

The judgment below is affirmed.—Affirmed.

DONEGAN, C. J., and MITCHELL, PARSONS, KINTZINGER, HAMILTON, ANDERSON, and POWERS, JJ., concur.